870 So.2d 1111 (2004)
Jeannie GIBBS, Plaintiff-Respondent
v.
MAGNOLIA LIVING CENTER, INC., Defendant-Applicant.
No. 38,184-CW.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
*1112 Keiser, Auzenne & Boudreaux by Randall B. Keiser, Alexandria, for Applicant.
James D. Caldwell, Tallulah, for Respondent.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The plaintiff, alleging herself to be "a surviving child" of the decedent, filed this suit against a nursing home asserting survival and wrongful death claims grounded in the Nursing Home Bill of Rights. Additionally, the plaintiff had an action instituted against four other health care providers before a medical review panel for alleged medical malpractice. Following the trial court's denial of defendant's dilatory and *1113 peremptory exceptions, this court granted and docketed this civil writ application to resolve the issues of whether the trial court erred in determining that the four health care providers were not necessary parties to the present action and in finding that the plaintiff had alleged sufficient facts to establish her procedural capacity to bring the survival and wrongful death actions. Finding no error, we affirm the rulings on the exceptions.

Facts
Maudeal Cardin was a resident of Magnolia Living Center. On January 23, 2001, she was admitted to Franklin Medical Center with a urinary tract infection, pneumonitis, dehydration and decubitus ulcers, ailments which eventually caused her death on February 6, 2001. A surviving child of Cardin, Jeannie Gibbs, instituted survival and wrongful death actions against Magnolia pursuant to La. R.S. 40:2010.8, et seq., the Nursing Home Residents' Bill of Rights.[1]
Thereafter, Magnolia filed a peremptory exception of non-joinder of a party pursuant to La. C.C.P. arts. 927, 641 and 642. In support of the exception, Magnolia presented evidence that four other medical care providers, including Franklin Medical Center, were being sued by Gibbs in the parallel proceedings before the medical review panel. Magnolia argued that those parties were necessary parties to the present action and that this action should be dismissed until such time that those defendants may be added to the suit. Additionally, Magnolia filed a dilatory exception of lack of procedural capacity alleging that Gibbs had not alleged sufficient facts to establish her right to proceed in a representative capacity.
After hearing arguments on the exceptions, the trial court denied both exceptions. Magnolia sought writs from this court which granted and docketed the matter for briefing and oral argument.

Discussion

I.
The first issue concerns the plaintiff's procedural capacity to sue. The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment and/or challenges the authority of a plaintiff who appears in a purely representative capacity. Horrell v. Horrell, 99-1093 (La.App. 1st Cir.10/6/00), 808 So.2d 363, writ denied, 01-2546 (La.12/7/01), 803 So.2d 971; Palowsky v. Premier Bancorp, Inc., 597 So.2d 543 (La.App. 1st Cir.1992). Procedural capacity is presumed unless challenged by the dilatory exception. La. C.C.P. art. 700. Because Gibbs has not alleged in her petition that she is suing in a representative capacity, La. C.C. P. art. 930 required Magnolia to introduce evidence to support the dilatory exception of lack of procedural capacity unless the grounds thereof appeared from the petition.
La. C.C. arts. 2315.1 and 2315.2 set forth respectively the survival action and the wrongful death action and list the classes of claimants for those actions. The first class of claimants, whose existence precludes *1114 all other classes from making the claims, is listed in both articles, as follows:
The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
The petition alleges in this instance that Gibbs "is a surviving child of Maudeal Cardin." Magnolia argues that Gibbs has not alleged that she is the sole surviving child of Cardin. Nor does the petition state whether a spouse survived the decedent. Magnolia thus argues that the petition ambiguously leaves open the possibility of the existence of other members of the class of claimants to the survival and wrongful death claims for whom Gibbs has no procedural capacity to bring the claims.[2] Notably, however, Magnolia did not attempt to prove at the trial of the dilatory exception that there are other children of Cardin and that she died leaving a spouse.
The alleged ambiguity or vagueness of the petition would only have legal consequence for the grant of the dilatory exceptions of vagueness or lack of procedural capacity if (i) the survival or wrongful death claims seek relief which must be granted to the class as a whole, and (ii) Gibbs has no representative capacity to obtain that relief for the class. We find that those conditions do not apply to either the wrongful death claim or the survival claim for the following reasons.
The jurisprudence holds that the wrongful death action compensates the class beneficiaries under La. C.C. art. 2315.2 for their own individual injury arising out of the victim's death. Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1274. The members of the beneficiary class can receive general damages in various amounts on the basis of the differing degrees of affection which existed between the deceased and the different members of the class. Muse v. Dunbar, 97-582 (La.App. 3d Cir.6/10/98), 716 So.2d 110.
The Civil Code addresses the nature of an obligation owed to multiple persons in Section 5 of Chapter 3 of Title III. La. C.C. arts. 1786 et seq. Under Article 1787, a several obligation with multiple obligees is defined as follows:
When one obligor owes a separate performance to each of different obligees, the obligation is several for the obligees.
A several obligation produces the same effects as a separate obligation owed to each obligee by an obligor or by each obligor to an obligee.
The above authority therefore indicates that the tortfeasor owes a separate performance for the payment of different damages to each of the members of the class of beneficiaries entitled to the wrongful death claim. The delictual obligation is therefore several for multiple wrongful death claimants within the beneficiary class. Accordingly, regardless of whether there are other members of the class of beneficiaries for the asserted wrongful death of this decedent, in accordance with the last paragraph of Article 1787, Gibbs may pursue the defendant in this action with full procedural capacity for her separate claim.
The survival action is, however, a totally separate and distinct cause of action from the wrongful death claim. Walls, supra at 1273. The survival action differs from the wrongful death claim in that it *1115 "permits recovery only for the damages suffered by the victim from the time of injury to the moment of death." Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). "The action is based upon the victim's right to recovery being transferred by operation of law to the beneficiary." Id.
While the survival claim relates to the damages suffered by the decedent, both La. C.C. art. 2315.1(B)[3] and La. C.C.P. art. 801[4] indicate that members of the applicable class of beneficiaries have capacity to bring the survival claim or to continue a pending tort claim after the death of the victim without the involvement of the decedent's succession representative. Carl v. Naquin, 93-1725 (La. App. 1st Cir.5/20/94), 637 So.2d 736.
Nevertheless, Magnolia's assertion of the ambiguity of the petition regarding Gibbs status as "a child" presents the question of whether one member of the class of beneficiaries for the survival action has capacity to represent the class as a whole. This issue may also be resolved by considering Section 5 of Chapter 3 of Title III of the Civil Code provisions on obligations, which provides as follows:
La. C.C. art. 1788 (in pertinent part): When one obligor owes just one performance intended for the common benefit of different obligees, neither of whom is entitled to the whole performance, the obligation is joint for the obligees.
La. C.C. art. 1789 (in pertinent part): When a joint obligation is divisible ... each joint obligee is entitled to receive, only his portion.
The delictual obligation of the tortfeasor to pay for the damages experienced by the victim before her death represents a single performance owed to all Article 2315.1 survival beneficiaries and is therefore a joint obligation for the obligees. Any judgment for the payment of money damages is a divisible obligation. La. C.C. art. 1815. Therefore, even assuming that there are other members of the beneficiary class under Article 2315.1, Gibbs would have procedural capacity to recover at least her portion of the survival action damages through this suit. The petition is not subject to either the vagueness exception or the exception of lack of procedural capacity because the alleged delictual obligation is joint and divisible for Gibbs who is at least "a member" of the beneficiary class.
If Maudeal Cardin was survived by other children or a spouse, or both, the possibility for the peremptory exception of nonjoinder remains. Cf., Rainey v. Entergy Gulf States, Inc., 01-2414 (La.App. 1st Cir.7/2/03), 859 So.2d 63, writ denied, 03-2107 (La 11/14/03), 858 So.2d 426. Also, in view of C.C. art. 1789 and the joint obligee's entitlement to her portion or virile share, any facts concerning the existence of other beneficiaries for the survival claim appear relevant as an affirmative defense. However, we make no ruling of the propriety of the peremptory exception *1116 or such affirmative defense at this time.[5]

II.
Magnolia also contends that the trial court erred in failing to dismiss the suit without prejudice until such time that the medical care providers in the parallel proceedings before the medical review panel can be joined in the present action.
The peremptory exception of nonjoinder under La. C.C.P. art. 927 requires that the issue be considered under La. C.C.P. arts. 641 and 642. Article 641 provides for the mandatory joinder of persons who can be made parties, as follows:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impeded his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
To the extent that the person identified by the test of Article 641 cannot be made a party, the court shall determine whether the action should proceed without joinder or be dismissed by consideration of the following factors listed in Article 642:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person's absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
A person should be deemed needed for just adjudication only when absolutely necessary to protect substantial rights. Industrial Companies, Inc. v. Durbin, 02-0665 (La.1/28/03), 837 So.2d 1207. The factors set forth in La. C.C.P. art. 641 replace the former classification of parties as necessary or indispensable which was based solely on the interests of the party to be joined. 1995 Comment La. C.C.P. art. 641; State, DOTD v. Lamar Advertising Co. of La., Inc. 279 So.2d 671 (La. 1973). Courts are to determine whether a party should be joined and whether the action should proceed if a party cannot be joined by a factual analysis of all the interests involved. La. C.C.P. art. 642.
For a tort action, La. C.C. art. 2323 requires the consideration of the fault of all parties, as follows:
A. In any action for damages where a person suffers injury, death or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers *1117 injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.... (Emphasis supplied)
In conjunction with the provision on comparative fault, La. C.C. art. 2324 reviews the relationship of the obligations of multiple tortfeasors, as follows:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.
Citing Dumas v. State ex rel. Dept. of Culture, Recreation, and Tourism, 02-0563 (La.10/15/02), 828 So.2d 530, Magnolia argues that the fault of all persons (joint tortfeasors) allegedly contributing to an injury must be quantified and the joint tortfeasors joined in the same suit. Magnolia's reliance upon Dumas for such a proposition of law is misplaced.
Dumas involved a wrongful death and survival action against the State of Louisiana for an alleged defect in a state road. The plaintiff's decedent was injured in a bicycle accident on the road and ultimately died while being treated for his injuries at a hospital. The state answered the suit alleging victim fault and asserted an affirmative defense that the death of the victim was caused solely by the medical negligence of the hospital staff. Plaintiffs filed a motion to strike those portions of the answer dealing with the hospital's fault on the policy grounds of the prior jurisprudence that the original tortfeasor is the legal cause of 100% of the victim's harm regardless of the subsequent medical malpractice. The trial court granted the motion to strike on the grounds that such legal policy remained viable in our tort law despite the 1996 amendment to Articles 2323 and 2324. This court agreed and affirmed the trial court. The Louisiana Supreme Court granted writs and reversed the lower courts. Specifically, the court ruled that Article 2324(B) abolished solidarity among non-intentional tortfeasors and makes each liable only for his own share of the fault. Though the issue of nonjoinder was not specifically in dispute in Dumas, the court noted that "[p]ursuant to Article 2323, the fault of both the State and the allegedly negligent health care providers should be determined notwithstanding the fact that the health care providers are nonparties." The court therefore allowed the issue of the medical malpractice of nonparties to be tried as an affirmative defense and, in remanding the case, did not require that the peremptory issue of joinder be considered by the trial court.[6]
*1118 In this case, Magnolia's evidence of the alleged joint tortfeasors also showed that those medical care providers could not be made parties to this action because of the medical malpractice act. La. R.S. 40:1299.47.B(1)(a)(i). Therefore, the test of Article 642 was applicable.
The first factor under Article 642 tests the extent of prejudice to the non-joined party and the existing parties to the suit. While we will review the prejudice to the plaintiff in consideration of factor four, we do not find that Magnolia or any other joint tortfeasor will be prejudiced by the trial court's denial of the exception on joinder. Articles 2323 and 2324 limit the defendant/tortfeasor's liability to only his degree of fault as a joint and divisible obligor. By raising the affirmative defense, Magnolia may show the share of fault attributable to the absent health care providers thereby reducing its share of fault. Dumas, supra. Likewise, the health care providers, as defendants in Gibbs' medical malpractice action, may also raise as an affirmative defense Magnolia's negligence as a concurrent cause of the defendant's injuries and death. Magnolia will bear no responsibility for any judgment of liability rendered in the malpractice proceeding.
The second factor tests whether the trial court measures can lessen or avoid prejudice. Since neither Magnolia nor the non-joined parties are prejudiced, this factor weighs more for the plaintiff and judicial administration. While the medical malpractice claim cannot presently proceed in district court, it may later be filed in the court after review by the medical review panel. At that time a measure to consolidate the actions might be appropriate.
The third factor asks whether a judgment rendered in a person's absence will be adequate. The present action can adequately determine Magnolia's share of fault in relation to the fault of the other tortfeasors alleged in an affirmative defense. The reduction in the payment of the joint and divisible obligation that Magnolia may owe with the other tortfeasors can be determined, and an adequate judgment can be rendered limited to an amount in relation to Magnolia's degree of fault.
The adequacy of the judgment and the prejudice to the plaintiff are considered in the first and fourth factors. Here, because of the procedural impediment of the medical review panel, the plaintiff may not be able to have these matters tried together if she so desires. Therefore, the possibility of multiple or inconsistent judgments may affect the plaintiff's recovery. However, from this record, we do not have before us the facts concerning the other alleged tortfeasors and cannot, and should not at this stage of the proceedings, determine whether the acts of the defendants in both suits amount to concurrent and related negligence. Only the plaintiff can judge the existence of her prejudice, and she has brought this suit and opposed the peremptory exception for joinder indicating that she is not prejudiced. In opposing Magnolia's exception, Gibbs asserts only the prejudice which she may experience if the case is dismissed. In addition to delay, Gibbs points out that prescription would run on her dismissed claim against Magnolia, and there is no guarantee that the defendants in the malpractice action will be determined to be negligent and joint tortfeasors with Magnolia. If so, the medical malpractice action may not act as an interruption of her claim against Magnolia *1119 under La. C.C. art. 2324(C). Therefore, with Gibbs asserting no prejudice to her in maintaining this action and with no prejudice to the defendant or the non-joined parties, we find no error by the trial court in maintaining the action under La. C.C.P. art. 642.[7]
Finally, we are unpersuaded by the ruling in Bonnette v. Tunica-Biloxi Indians, 02-919 (La.App. 3d Cir.5/28/03), 873 So.2d 1, 2003 WL 21229282, which is argued by Magnolia. The case appears inconsistent with the express wording of La. C.C. art. 2323, Dumas and our analysis under La. C.C.P. art. 642.

Conclusion
For the foregoing reasons, we affirm the judgment appealed and remand for further proceedings in accordance with this opinion.
JUDGMENT AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Violations of the Residents' Bill of Rights Law relating to medical treatment constitute an "offense or quasi-offense" that give rise to the application of La. C.C. art. 2315, including the right of a survival action. Short v. Plantation Management Corp. 99-0899 (La. App. 1st Cir.12/27/00), 781 So.2d 46. See also, Rachal v. Peters, 28,655 (La.App.2d Cir.9/25/96), 680 So.2d 1280; Robicheaux v. Adly, 02-37 (La.App. 3d Cir.6/12/02), 827 So.2d 429, writ denied, 02-2783 (La.2/7/03), 836 So.2d 100 and Hinson v. The Glen Oak Retirement System, 37,550 (La.App.2d Cir.8/20/03), 853 So.2d 726, writ denied, 03-2835 (La.12/19/03), 861 So.2d 572.
[2] Magnolia's assertion in argument of this ambiguity from the face of the petition may be considered as an exception of vagueness. The caption of the pleading does not control; the court is obligated to determine the substance of the pleading. Ford Motor Credit Co. v. Brown, 32,995 (La.App.2d Cir.4/5/00), 756 So.2d 654, 658.
[3] La. C.C. art. 2315.1(B) provides: In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.
[4] La. C.C.P. art. 801 provides: When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality.

As used in Articles 801 through 804, "legal successor" means:
(1) The survivors designated in Article 2315.1 of the Civil Code, if the action survives in their favor; and ...
[5] The amendment to former La. C.C.P. art. 643 removing the statement that "joint obligees are necessary parties to any action to enforce a joint right" may indicate that the defendant/obligor's protection from prejudice is to plead as a defense the principle of divisibility of the obligation reflected in C.C. art. 1789.
[6] The appellate court has the power to notice the peremptory exception of nonjoinder on its own motion under La. C.C.P. arts. 927(B) and 645. When such failure is pleaded successfully in or noticed by an appellate court, the latter may remand the case for such amendment and further evidence. La. C.C.P. art. 646.
[7] Also noteworthy to this discussion is the 1995 amendment to La. C.C.P. Art. 643 which eliminated the earlier language of that article that had classified "all joint obligors" as necessary parties to an action. See Historical and Statutory Notes, La. C.C.P. art. 643. The 1999 Official Revision Comments to La. C.C.P. art. 643 explain that "[t]here is no theoretical base which requires the joinder of all joint ... obligors in Louisiana" because the obligation is divisible and not collective. Accord, Louisiana Civil Law Treatise: The Law of Obligations, Litvinoff § 7.23 Joint and Divisible, Procedural Aspects.